UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHEAL BRIGHT, ) | |
| ) | |
| Movant, ) | |
| ) | No. 3:19-cv-00790 |
| v. ) | Judge Trauger |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Pending before the court is pro se movant Micheal Bright's motion and supplement to the motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence previously imposed by this court. (Doc. Nos. 1, 7). The government filed a response to the motion, urging that Bright's motion should be denied on two independently sufficient grounds. (Doc. No. 11). For the following reasons, Bright's motion will be denied, and this action will be dismissed.

**I.     Background**

In 2015, Bright was charged in a superseding indictment with six counts based on his participation in two separate Hobbs Act robberies occurring on two different days, one of which resulted in a fatal shooting. *See United States v. Micheal Bright*, No. 3:15-cr-00140 (hereinafter "Crim. No.") (Doc. No. 27, Superseding Indictment).

The first robbery occurred on the night of June 3, 2015. Metropolitan Nashville Police Department (MNPD) Officers responded to an attempted robbery at the Express Market located at 2408 Antioch Pike, Antioch, Tennessee. (Crim. Doc. Pre-Sentence Report (PSR) ¶ 9). The Express Market's surveillance cameras, which captured the incident, showed three armed, masked people enter the market. (*Id.*) As the investigation later revealed, those people were Dominique Cordell

1

Wallace, Demontay Thomas, and Robert Dewayne Brooks. (*Id*.) A fourth individual, identified as movant Micheal Bright, served as the getaway driver in the robbery and never entered the market. (*Id*.)

Once inside the store, Brooks grabbed a store clerk and forced him at gunpoint toward the counter. (*Id*.) The store owner was standing behind the counter, which was separated from the rest of the store by a plexiglass wall. (*Id*.) The suspects held the owner and clerk at gunpoint while demanding money. (*Id*.) Thomas then began to crawl under the counter to gain access to the cash register. (*Id*. ¶ 10). As he was doing so, Brooks sought access to the cash register by crawling through a hole in the plexiglass wall. (*Id*.) Brooks had not seen Thomas crawl under the counter and was startled when he suddenly saw Thomas below him. (*Id*.) Brooks then began firing his pistol in Thomas's direction, ultimately shooting him. (*Id*.) Thomas managed to get up after he was shot and made it to the entrance of the market before falling to the ground.

After Thomas was shot, Brooks and Wallace started running toward the door. (*Id*. ¶ 11). As they did, Brooks grabbed the store clerk and forced him to accompany them before shoving him to the ground near the store exit. (*Id*.) Once the clerk was on the ground, Wallace shot him in the head. (*Id*.) The clerk was later transported to Vanderbilt Medical Center for treatment. (*Id*.) He ultimately survived, despite sustaining serious injuries. (*Id*.) Thomas, who was shot by Brooks, was pronounced dead at the scene. (*Id*.)

After the shots were fired, Wallace and Brooks got into Bright's vehicle, a PT Cruiser, and fled the scene without obtaining any of the money sought in the robbery. (*Id*.) The car used by Bright belonged to his girlfriend, Katrine Davis. (*Id*.)

MNPD collected multiple cartridge casings from the scene, including four .40 caliber cartridge casings bearing the head stamp markings "PMC 40 S&W", which was the ammunition

used by Brooks to shoot Thomas, found near the cash register area. (PSR ¶ 12). MNPD also collected a 9mm firearm on the sidewalk near Thomas's body and one .380 caliber cartridge casing near the doorway of the business. (*Id*.) The 9mm pistol was carried by Thomas in the attempted robbery. (*Id*.) The .380 caliber cartridge casing, identified as Winchester .380 caliber ammunition, originated from the gun carried by Wallace and was used by him to shoot the store employee. (*Id*.)

After the shooting at the Express Market, Wallace gave the gun he used to shoot the clerk to Bright, and subsequently to Davis, to "get rid of it" for Wallace. (*Id*. ¶ 13). The gun was eventually recovered several weeks later after substantial effort by law enforcement tracking multiple exchanges of the weapon. (*Id*.) A ballistic analysis was conducted on the gun by the MNPD firearms lab, which resulted in a positive identification of the gun as the one used in the near-fatal shooting of the store employee. (*Id*.)

In a Mirandized interview in July 2015, Bright admitted to being the driver in the attempted robbery and shooting. (*Id*. ¶ 14). At that time, he denied having knowledge of the robbery until the others went inside the store, which investigators determined through other interviews to be false. (*Id*.) Bright advised investigators that Brooks, Wallace, and Thomas were all armed and put masks on before going inside the store. (*Id*.) Following the shooting, Bright stated that he observed Thomas lying in the doorway as he drove Wallace and Brooks away from the scene. (*Id*.) Wallace told Bright that he had shot the clerk. (*Id*.)

The second robbery occurred on June 21, 2015, at approximately 1:15 a.m. (*Id*. ¶ 16). MNPD officers responded to an armed robbery at the Jack in the Box restaurant located at 622 McGavock Pike in Nashville, Tennessee. (*Id*.) Information developed in the ensuing investigation revealed two female Jack in the Box employees, K.W. and J.M., were outside taking a smoke break when three individuals approached them with their faces covered. (PSR ¶ 17). Suspect #1 pointed

a firearm with a red dot laser attached to it at the females and stated, "You know what the fuck this is." (*Id.*) The suspects then forced K.W., J.M., and A.B. into the office to open the safe, while the other suspect pointed his firearms and issued threats to the employees, forcing them to lie on the floor. (*Id.*) K.W. opened the safe, removed the money, and placed it in a trash bag, at which point the suspects took the money, left the business, and reunited with Wilson. (*Id.*) Bright and Davis took a large sum of change taken during the robbery to a Walmart on Charlotte Pike in West Nashville later that same morning, where they exchanged the coins for bills at a Coinstar machine. (*Id.* at 21).

The surveillance video helped identify Suspect #1 as a Black male with dreadlocks who wore a light blue bandana covering his face. (*Id.* ¶ 18). Suspect #1, later confirmed as Bright, was armed with a black semiautomatic pistol with a red dot laser attached. (*Id.*) Information developed from accomplices later revealed that Matthew Wilson ("Wilson") served as the driver in the armed robbery of the Jack in the Box. (*Id.* ¶ 19). Wilson's girlfriend, identified as K.W., worked at that Jack in the Box location and was informed previously of the intended robbery by Wilson. (*Id.*) On the night of the robbery, Wilson, Porter, Bright, and R.A. (a juvenile), met at Davis's residence in South Nashville, at which time the robbery plan was discussed. (*Id.*) The plan was to commit an armed robbery of the Jack in the Box to obtain a large sum of cash belonging to the business. (*Id.*)

In a Mirandized interview in July 2015, Bright admitted his role and participation in the armed robbery of the Jack in the Box and to using a SCCY 9mm pistol during the robbery. (PSR ¶ 23).

On December 9, 2015, Bright was charged in a superseding indictment with six counts related to the June 3, 2015 and June 21, 2015 robberies. (Crim. Doc. No. 27, Superseding

4

Indictment). Counts One through Three pertained to the June 3, 2015 robbery and included Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (Count One); Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (Count Two); and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Three). (*Id.*) Counts Seven through Nine pertained to the June 21, 2015 robbery and included Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (Count Seven); Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Eight); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Nine). (*Id.*)

Bright entered a plea of guilty to Counts One, Two, Seven, Eight, and Nine on December 12, 2017, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). (Crim. Doc. No. 163, Plea Agreement). In exchange for his plea of guilty, the government dismissed the second § 924(c) charge in Count Three.

On May 11, 2018, Bright was sentenced 192 months as to each of Counts One, Two, and Seven, 120 months as to Count Nine, to run concurrently with each other, and 84 months as to Count Eight to run consecutively with the other counts, for a total of 276 months. (Crim. Doc. No. 188, Judgment). Bright did not file a direct appeal.

Bright filed the instant § 2255 motion on September 6, 2019 (Doc. No. 1 at Page ID #7), challenging his conviction on Count Eight. Bright contends, based on *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), that the predicate offense of conspiracy to commit robbery affecting commerce is not a crime of violence, rendering invalid his conviction for the § 924(c) violation. The government filed a response to the motion, urging that Bright's motion should be denied. (Doc. No. 11 at Page ID #55).

## II.     Standard for Reviewing Section 2255 Motions

A prisoner in custody under a sentence of a federal court may move the court to vacate, set aside, or correct his sentence on certain grounds, including that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). It is well established that, "[t]o prevail under § 2255, a defendant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or jury's verdict," or "must show a fundamental defect in his sentencing which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999) (internal quotation marks omitted). In § 2255 proceedings, it is the movant's burden to show his entitlement to relief. *See Potter v. United States*, 887 F.3d 785, 787-88 (6th Cir. 2018).

In ruling on a motion made pursuant to § 2255, the court must determine whether an evidentiary hearing is necessary. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). "Bald assertions and conclusory allegations" do not provide grounds to warrant requiring the government to respond to discovery or to require an evidentiary hearing. *Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017).

## III.     Analysis

Bright challenges his conviction on Count Eight (Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)) pertaining to the June 21, 2015 robbery. Relying on *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), Bright contends that the predicate offense for Count Eight does not qualify as a crime of violence, rendering invalid his § 924(c) conviction.

6

The government urges that Bright's motion should be denied because (1) his plea agreement contains a post-conviction waiver in which he knowingly and voluntarily waived his right to challenge his sentence in a § 2255 motion or, alternatively, (2) the predicate offense for Bright's § 924(c) conviction in Count Eight was Hobbs Act Robbery, which qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A). (Doc. No. 11 at Page ID #53).

### A. Bright is not barred from filing the instant § 2255 motion by the waiver in his plea agreement.

The government contends that Bright waived his right to attack his sentence under § 2255, and that that waiver operates as a "total bar" to the instant motion. (Doc. No. 11 at Page ID #53). The waiver on which the government relies stated as follows:

> 21. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence that includes a sentence of imprisonment of 276 months in the custody of the Bureau of Prisons followed by 5 years of supervised release as set forth in this Agreement. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence that includes a sentence of imprisonment of 276 months in the custody of the Bureau of Prisons followed by 5 years of supervised release as set forth in this Agreement.

(Crim. Doc. No. 163, Page ID #362 ¶ 21).

The court finds that the language of this waiver is unambiguous. The waiver treats the matter of Bright's conviction and his sentence separately. In its first sentence, it addresses Bright's waiver on "the issue of guilt," and that waiver extends only to the appeal process. Starting with its

7

second sentence, the language turns to Bright's waiver "[r]egarding sentencing," and he waived "any sentence that includes a sentence of imprisonment of 276 months in the custody of the Bureau of Prisons followed by 5 years of supervised release as set forth in this Agreement." (*Id.*) Regarding sentencing, Bright also waived "any collateral attack" to challenge "the sentence imposed." Thus, with respect to his convictions, Bright waived his right to appeal; with respect to his sentence, Bright waived his right to appeal or collaterally attack "the sentence imposed" as long as that sentence was 276 months. The waiver provided exceptions if Bright raised, in an appeal or collateral attack, a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.

The Sixth Circuit Court of Appeals recently addressed a virtually identical waiver in the same context in which this court considers Bright's waiver. In *United States v. Anthony Brooks*, No. 3:10-cr-163, the defendant entered a plea agreement in this court. (*See id.*, Doc. No. 1269, Page ID #3912-3913). Brooks's waiver stated the he waived an appeal of "any issue bearing on the determination of whether he is guilty" and of "any sentence" as well as any "collateral attack" of any "sentence." (*Id.* at Page ID #3912).[1] When Brooks sought authorization from the Sixth Circuit to file a second or successive § 2255 motion to raise a *Davis* claim, the government argued,

---

[1] The waiver reads in full:

> 18. Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, the defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence that is 300 months. The defendant also knowingly waives the right to challenge the sentence imposed in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241, and/or 18 U.S.C. § 3582(c). However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence that is 300 months.

*Brooks*, No. 3:10-cr-163 (Doc. No. 1269, Page ID #3912-3913).

as it does now, that Brooks's waiver precluded any § 2255 motion. *In re Brooks*, 2020 U.S. App. LEXIS 6371 (6th Cir. Feb. 28, 2020). In response, Brooks made essentially the same argument that Bright makes here.

The Sixth Circuit agreed with Brooks, rejecting the government's argument regarding the scope of the waiver. *Id.* *3. The Sixth Circuit explained, "[T]he waiver provides that Brooks waives only 'the right to challenge [his] *sentence'*; it does not provide that he also waives the right to challenge his *convictions*—including his § 924(c) conviction that he seeks to challenge here" under *Davis*. (*Id.*) (citing *United States v. Spear*, 753 F.3d 964, 960 (9th Cir. 2014) (emphasis in original, quoting plea agreement)). *Brooks* is fully applicable here, since the respective waivers are virtually identical. And as in *Brooks*, the court finds that Bright has not waived his right to challenge his § 924(c) conviction under *Davis*.

> **B.** **Although Bright may file his § 2255 motion, the predicate offense for Bright's § 924(c) conviction was Hobbs Act Robbery, which still constitutes a viable crime of violence under *Davis*.**

Bright was convicted on Count Eight (Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)) pertaining to the June 21, 2015 robbery. The language of that count reads as follows:

> On or about June 21, 2015, in the Middle District of Tennessee, **MICHEAL D. BRIGHT a/k/a Groove** did knowingly use, carry, and brandish a firearm during and in relation to a crime of violence, to wit: <u>robbery affecting commerce</u> in violation of Title 18, United States Code, Sections 1951and 2.
>
> All in violation of Title 18 United States Code, Sections 924(c)(1)(A) and 2.

(Case 3:15-cr-140, Doc. No. 27 at Page ID #98) (underline added).

For the purposes of § 924(c), the term "crime of violence" means an offense that is a felony and:

9

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id*. The statute's two sections are known as the "elements clause," § 924(c)(3)(A), and the "residual clause," § 924(c)(3)(B). The Supreme Court in *Davis* held that § 924(c)(3)(B)'s residual clause is unconstitutionally vague. 139 S. Ct. at 2324-25, 2336. It is this decision upon which Bright bases his claim for relief.

As a result of *Davis*, conspiracy to commit robbery affecting commerce is no longer viable as a qualifying crime of violence for purposes of § 924(c)(3). *See United States v. Ledbetter,* 929 F.3d 338, 361 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 509 (Nov. 12, 2019); *United States v. Nixon*, No. 1:18-cr-10042-JDB-1, 2020 WL 963383, at *2 (W.D. Tenn. Feb. 27, 2020) (quoting *Ledbetter* and finding no qualifying predicate offense to support the count seven § 924(c) conviction); *Baugh v. United States*, No. 3:16-cv-02628, 2010 WL 409728, at *4 (M.D. Tenn. Jan. 24, 2000) ("Baugh's conviction for conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the elements clause of section 924(c)(3)(A), and it cannot qualify under the now invalidated residual clause of section 924(c)(3)(B).").

However, the crime of robbery affecting commerce still qualifies as a crime of violence under the elements clause of § 924(c)(3)(A). *See United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017), *cert. denied*, 137 S. Ct. 2230 (June 5, 2017) (holding that Hobbs Act robbery is a crime of violence under § 924(c)'s use-of-force clause); *see also United States v. Camp*, 903 F.3d 594, 597 (6th Cir. 2018) (relying on *Gooch* and finding Hobbs Act robbery to be a crime of violence under the elements clause of Section 924(c)(3)(A) and supporting conviction for carrying a firearm during a crime of violence).

Here, the Superseding Indictment states that "robbery affecting commerce, in violation of Title 18,United States Code, Section 1951 and 2", otherwise known as Hobbs Act robbery, is the predicate offense for Bright's conviction in Count Eight. (Crim. Doc. No. 27, Superseding Indictment, Page ID #98). Bright seems to have confused the predicate offense for Count Eight with the predicate offense for Count Three. Count Three was predicated on conspiracy to commit Hobbs Act Robbery and attempted Hobbs Act Robbery. (Crim. Doc. No. 27 at Page ID #96) (alleging that Bright "did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: conspiracy to commit robbery affecting commerce and attempted robbery affecting commerce, in violation of Title 18, United States Code, Section 1951 and 2…") (Crim. Doc. No. 27, Superseding Indictment, Page ID #96). As noted above, conspiracy to commit Hobbs Act Robbery is no longer viable as a qualifying crime of violence for purposes of § 924(c)(3).[2] Count Three, however, was dismissed as part of his plea agreement, and is not the subject of Bright's instant challenge. Bright's conviction on Count Eight remains, notwithstanding the impact of *Davis* on the conspiracy predicate. Bright's sole claim therefore will be dismissed.

**IV. Conclusion**

The motion and the record here "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For these reasons, the movant is not entitled to an evidentiary hearing, and his claim fails. Accordingly, the movant's motion under 28 U.S.C. § 2255 (Doc. No. 1) will be denied, and this action will be dismissed.

---

[2] It is worth noting that this court previously determined that, considering § 924(c)(3)(A)'s definition of "crimes of violence" as those offenses that require either "the use" or "attempted use" of force, *id.*, the minimum conduct necessary to commit an attempted Hobbs Act robbery amounts to a crime of violence under the elements clause. *See Dominique Wallace v. United States*, No. 3:19-cv-1122 (M.D. Tenn.) (Doc. No. 14). Wallace's appeal of that decision is pending before the Sixth Circuit Court of Appeals.

11

## V. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Cases requires that a district court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court finds that the movant has not satisfied this standard and will therefore deny a certificate of appealability as to the sole claim raised in Bright's § 2255 motion.

An appropriate order will enter.

	Aleta A. Trauger
	United States District Judge

12

Case 3:19-cv-00790 Document 12 Filed 08/31/20 Page 12 of 12 PageID #: 71